# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
# AT BLUEFIELD

**JACK E. VANCE,**

    **Plaintiff,**

v.                                             **CIVIL ACTION NO. 1:16-12296**

**LLOYD WILLIAM LIGHTNER, SR.,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER

By Standing Order, the action was referred to United States Magistrate Judge Omar J. Aboulhosn for submission of findings of fact and recommendations regarding disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Magistrate Judge Aboulhosn submitted his Findings and Recommendation ("PF&R") to the court on November 13, 2017, in which he recommended that the court deny plaintiff's application to proceed without prepayment of fees and costs, dismiss plaintiff's complaints, and remove this matter from the court's docket.

In accordance with the provisions of 28 U.S.C. § 636(b), the parties were allotted fourteen days plus three mailing days in which to file any objections to Magistrate Judge Aboulhosn's Findings and Recommendations. On January 5, 2017, the court granted plaintiff's motion for an extension of time in which to file objections, giving him until December 27, 2017 to do so. On

December 22, 2017, Vance filed objections.  With respect to those objections, the court has conducted a de novo review.

## I. Background

The United States Court of Appeals for the Fourth Circuit summarized Vance's underlying criminal conduct as follows:

> Taken in the light most favorable to the Government, . . . the evidence presented at trial established the following facts.  Vance began having an intimate, sexual relationship with Jane Doe in November 2002.  At that time, Doe was thirteen years-old, while Vance was thirty-five.  Doe documented her relationship with Vance by making notations in her calendar, which included descriptions of the couple's various sex acts.  In the Spring of 2005, Doe's mother discovered Doe's calendar, and in April 2005, the Does filed a criminal complaint against Vance.
>
> With criminal charges pending in West Virginia, Vance and Doe left the state for Virginia, where they planned to be married.  This, Vance believed, would force West Virginia authorities to forego prosecuting him.  On August 23, 2005, Vance drove himself and Doe to Harrisonburg, Virginia.  Once in Harrisonburg, Vance checked into a motel, where Vance and Doe engaged in sexual intercourse.  At the time of this trip, Doe was fifteen years-old.
>
> Vance and Doe returned to West Virginia approximately ten days later, and shortly thereafter, Vance was indicted on [federal] charges.

United States v. Vance, 290 F. App'x 532, 533 (4th Cir. 2008).

After a jury trial in the United States District Court for the Northern District of West Virginia, Vance was convicted of traveling in interstate commerce for the purpose of engaging in a sexual act with a person under the age of eighteen, in

violation of 18 U.S.C.A. § 2423(b); and knowingly transporting someone under the age of eighteen in interstate commerce with intent to engage in a sexual activity, in violation of 18 U.S.C.A. § 2423(a).  See id. at 532-33.  He was sentenced to a term of imprisonment of 87 months on each count of conviction, sentences to run concurrently.  See id.  The Bureau of Prisons' Inmate Locator indicates that Vance was released from federal custody on August 20, 2013.

With respect to the state charges arising out of the conduct described above, on March 6, 2007, Vance pled guilty to five counts of Third Degree Sexual Assault pursuant to a plea agreement with the State.  See ECF No. 8-1 at pp.4-5.  He was sentenced to an indeterminate term of one to five years on each count to run consecutively.  See id. at pp.7-8.

Vance, currently incarcerated at Huttonsville Correctional Center in Moundsville, West Virginia, filed the instant complaint under 42 U.S.C. § 1983 against Lloyd William Lightner, Sr.  According to Vance's allegations, Lightner, a bail bondsman licensed in West Virginia, was the person who retrieved Vance from Virginia and brought him back to West Virginia to face the state charges pending against him.  Vance contends that Lightner's actions in this regard amounted to kidnapping because Lightner was not licensed as a bail bondsman in the Commonwealth of Virginia.

II. <u>Analysis</u>

Because liability under Section 1983 attaches only to conduct occurring under color of State law, Magistrate Judge Aboulhosn recommended dismissal of Vance's complaints against Lightner. Magistrate Judge Aboulhosn found that Vance's allegations did not suggest that Lightner was acting as a state actor when he traveled to Virginia and apprehended Vance. Private conduct constitutes State action only if it is "fairly attributable to the State." <u>Lugar v. Edmondson Oil Co.</u>, 457 U.S. 922, 937 (1982). As the magistrate judge noted,

> A person may fairly be said to be a State actor "because he is a State official, because he has acted together with or has obtained significant aid from State officials, or because his conduct is otherwise chargeable to the State." <u>Id.</u> [quoting <u>Lugar</u>]. The Fourth Circuit has recognized that under certain circumstances bail bondsmen may be liable under Section 1983 for violating an individual's constitutional rights. <u>Jackson v. Pantazes</u>, 810 F.2d 426 (4th Cir. 1987) (finding a private bail bondsman, who worked with a police officer to gain access to a private individual's residence, to be a state actor). Bail bondsmen are subject to liability for these actions insofar as they exercise powers conferred by state law and act in concert with state officials. <u>Id.</u> at 428-29. . . .

PF&R at 8. Magistrate Judge Aboulhosn concluded that there was no state action herein because "[t]here is no allegation or indication that Defendant was acting in joint activity with West Virginia police officers when Plaintiff was retrieved from the Commonwealth of Virginia." <u>Id</u>.

4

Vance's objections do not undermine Magistrate Judge Aboulhosn's findings in this regard. Rather than alleging any facts which would suggest that Lightner's conduct is fairly attributable to the State, Vance's objections are directed to the perceived egregiousness of Lightner's actions. However, as our appeals court has reaffirmed, "[t]he color of law requirement excludes from the reach of § 1983 all `merely private conduct, no matter how discriminatory or wrongful.'" Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (quoting Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999)). The Fourth Circuit has also made clear a bail bondsman will be considered a state actor if he "`has acted together with or has obtained significant aid from officials.'" Gregg v. Ham, 678 F.3d 333, 339 n.3 (4th Cir. 2012) (quoting Lugar, 457 U.S. at 937). "Applying these principles, we have held that a bail bondsman executing a search for a fugitive with the assistance of a police officer is a state actor and therefore subject to § 1983 liability." Id. (citing Jackson, 810 F.2d at 429-30).*

---

* In Jackson, the Fourth Circuit also concluded, in the alternative, that "the symbiotic relationship between bail bondsmen and the Maryland criminal court system" was sufficient to render the bail bondsman's conduct state action. Jackson, 810 F.2d at 430. "It is unlikely, however, that the symbiosis rationale remains viable. . . . While several courts have found that bail bondsmen are state actors when they are assisted by police officers, no court has expressly followed the symbiosis rationale absent direct state assistance, and several courts have expressly rejected the symbiosis rationale." John L. Watts,

5

Vance does not allege that Lightner was assisted by a public official or that a public official directed Lightner to act as he did. Accordingly, Lightner was not a state actor for purposes of Section 1983 and the action against him should be dismissed. See, e.g., McDaniel v. Bailey, 3:18-cv-204-RJC-DLH, 2018 WL 3381428, *4 (W.D.N.C. July 11, 2018) (holding that plaintiff could not maintain a § 1983 claim against a bail bondsman where plaintiff failed to allege that bail bondsman "worked in concert with a state actor or w[as] otherwise acting under the color of state law"); Morris v. Queen City Bonding, No. 3:13-cv-525-FDW, 2013 WL 5567420, *2 (W.D.N.C. Oct. 9, 2013) (dismissing for failure to state a claim § 1983 action against two bonding companies where plaintiff did not allege that bonding companies were acting under state law); Anderson v. Moats, No. 1:03CV152, 2004 WL 3621810, *3 (N.D.W. Va. Aug. 3, 2004) ("Bail bondsmen are subject to liability for these actions insofar as they exercise powers conferred by state law and act in concert with state officials. . . . In the case at bar, [the bail bondsmen] operated under authority granted by the state court, see W. Va. Code § 51-10-8, but they did not engage in joint

---

Tyranny By Proxy: State Action and the Private Use of Deadly Force, 89 Notre Dame L. Rev. 1237, 1258 (2014); see also Lopez v. Zouvelos, No. 13-CV-6474 (MKB), 2015 WL 5657361, *8 (E.D.N.Y. Sept. 23, 2015) ("The Fifth, Eighth, Ninth and Tenth Circuits have rejected the `symbiotic relationship' approach taken in Jackson.") (and authorities cited therein).

6

activity with state officials. Instead, they merely posted bond for Anderson without any assistance or direction by state agents. In so doing, they only acted as private citizens operating a licensed business enterprise. Thus, [the bail bondsmen]'s actions cannot be charged to the state and Anderson cannot sue them under § 1983."); Harrison v. Pinsky, No. CIV.A. HAR-92-3279, 1995 WL 860354, *3 (D. Md. Dec. 22, 1995) (dismissing 1983 action against bail bondsmen defendants because they "did not act together with or obtain significant aid from state officials, and because their conduct is not otherwise chargeable to the State").

### III. Conclusion

Accordingly, the court **OVERRULES** plaintiff's objection to the magistrate judge's PF&R. The court adopts the Findings and Recommendations of Magistrate Judge Aboulhosn and **DENIES** plaintiff's application to proceed without prepayment of fees and costs, **DISMISSES** plaintiff's complaints, and **DIRECTS** the Clerk to remove this matter from the court's active docket.

The Clerk is further directed to forward a copy of this Memorandum Opinion and Order to counsel of record and plaintiff, pro se.

It is **SO ORDERED** this 5th day of February, 2019.

ENTER: David A. Faber
Senior United States District Judge